UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRIAN STEVEN POOLE                         CIVIL ACTION NO. 18-cv-1125

VERSUS                                     JUDGE DOUGHTY

CITY OF SHREVEPORT                         MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

Brian Steven Poole ("Plaintiff") filed suit in state court against Shreveport Police Officer John Briceno and the City of Shreveport. Plaintiff alleged that Briceno shot him four times in the back after a traffic stop. His state court petition described Briceno's actions as excessive force that constituted an intentional tort or, in the alternative, gross or simple negligence.

Several months after the petition was served, Defendants served Plaintiff with interrogatories, one of which asked him to describe which actions he contends were unlawful or violated his rights under the laws of the United States or the State of Louisiana. Plaintiff's answer cited the Fourth Amendment to the U.S. Constitution. Defendants removed the case based on federal question jurisdiction within 30 days of being served with that answer.

Before the court is Plaintiff's Motion to Remand (Doc. 8) on the grounds that the removal was untimely. Plaintiff argues that his original petition triggered the removal

period because it alleged facts that could support a federal claim. For the reasons that follow, it is recommended that the motion to remand be denied.

**Timeliness Rules**

Defendants generally may remove a civil action brought in a state court if the federal district courts have original jurisdiction over the action. 28 U.S.C. §1441(a). The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is often referred to a "federal question" jurisdiction, and it is the basis for removal in this case.

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . ." 28 U.S.C. § 1446(b)(1). But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3).

Plaintiff argues that the service of his initial pleading—his petition—on April 5, 2018 triggered the removal period. Defendants respond that no federal claim was alleged in the petition or otherwise asserted until they were served with the discovery response on August 17, 2018, which made their removal on August 29, 2018 timely under the "other paper" provision. A review of the petition and relevant discovery is necessary to assess the issue.

**Relevant Facts**

Plaintiff's state court petition alleges that a Shreveport resident called 911 to report what she believed was a suspicious truck on her street, where there had been some recent burglaries. While this call was being investigated, Officer Briceno saw Plaintiff's truck stop at a stop sign. Plaintiff's truck did not match the description of the one reported by the resident, but Briceno turned on his emergency lights and attempted to make a traffic stop. Petition, ¶¶ 1-5.

Instead of stopping, Plaintiff drove through a parking lot and left the scene. Briceno began what turned out to be about a 15 minute low-speed pursuit that included five patrol cars. Plaintiff eventually stopped, exited his truck and, after some movement, placed his empty hands on the side rail of the bed of his truck. Briceno's patrol car rolled into the rear of Plaintiff's truck after Plaintiff had exited. Plaintiff then turned his back to Briceno and opened his truck door. Briceno shot Plaintiff three times in his back and once in the back of his thigh. Two more shots were allegedly fired but did not hit Plaintiff. ¶¶ 6-13.

Plaintiff was handcuffed and, eventually, taken by ambulance to the hospital. He spent approximately 38 days in the hospital, most of the time in a coma. The police found no weapons, illegal drugs, alcohol, or stolen items in Plaintiff's truck. Plaintiff alleges that he is no longer able to perform his job as an HVAC technician and that he will require extensive future medical care to address his injuries. ¶¶ 17-24.

Plaintiff's petition does not make reference to 42 U.S.C. § 1983 or any provision of the United States Constitution or other federal law. The only legal theories mentioned are

tort law concepts recognized by state but not federal law. In particular, the petition alleges as a follows:

25.

Defendant Briceno's shooting of Poole was unreasonable and constituted the use of excessive force and was without just cause or provocation. Briceno's actions therefore constituted an intentional tort, or, in the alternative, gross and/or simple negligence. He is thereby liable to Poole, and Poole is entitled to recover damages from Briceno.

26.

Defendant Briceno was acting within the scope of his employment with the City of Shreveport Police Department when he committed the intentional and/or negligent acts that caused the injuries to Poole. The City is therefore liable to Poole pursuant to La. Civil Code Article 2320 which states: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." The city is also liable pursuant to the theory of *respondeat superior*.

\*\*\*

29.
The City of Shreveport was negligent in failing to provide its employee, John Briceno, with proper training.

30.

Since Briceno initiated an attempted traffic stop of Poole's vehicle without any grounds to believe that Poole has committed an offense, the City of Shreveport was negligent in failing to provide its employee, John Briceno, with proper knowledge of the law.

Defendants served Plaintiff with written discovery requests on June 19, 2018. Interrogatory No. 10 asked Plaintiff to describe "each action and/or omission of defendants you contend was unlawful or otherwise violated your rights under the constitution and laws of the United States and/or the State of Louisiana." Plaintiff's answer, served on August

17, 2018, answered that the act of Officer Briceno in attempting to stop Plaintiff's truck without reasonable grounds to believe Plaintiff committed an offense, plus Briceno's shooting of Plaintiff:

> "violated Poole's constitutional rights, both under the **U.S. Constitution** and the State of Louisiana Constitution. Specifically, but not limited to Poole's **U.S. Constitution Fourth Amendment**—the protections of which apply equally to the States via the **Fourteenth Amendment**—right to privacy and to be secure in his person without unjustified interference was violated, which right is further guaranteed to Poole under Article I, Section 5 of the Louisiana Constitution." (Emphasis added.)

The answer also stated that "an Eighth Amendment right violation is being considered."

**Analysis**

### A. Federal Claim Must Appear on Face of Initial Pleading

Plaintiff does not contend that he specifically invoked federal law in his petition. He argues that service of his petition nonetheless triggered the removal period because the facts he alleged were sufficient to state a claim for excessive force that would be actionable under Section 1983 and the Fourth Amendment.

The Fifth Circuit employs a bright line test that defeats Plaintiff's argument. The rule has been well established since Leffall v. Dallas ISD, 28 F.3d 521 (5th Cir. 1994), a case in which the plaintiffs filed suit in state court after an accidental shooting at a school dance caused the death of a child. The plaintiffs later amended their petition to include a claim based on Section 1983, but without altering any of the factual allegations made in the original petition. The defendants then removed the suit to federal court. The plaintiffs filed a motion to remand on the grounds that the 30 day clock began when the defendants

received the original petition because it had not foreclosed removal based on a federal claim.

The Fifth Circuit looked to its recent decisions in diversity jurisdiction cases that had held that the removal clock does not begin to run from the receipt of the initial pleading unless it affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court. "By the same token, the removal clock began to run in the instant case only when the defendants received a pleading that revealed on its face that Leffall was asserting a cause of action based on federal law." Leffall, 28 F.3d at 525. Accordingly, the removal based on the amended petition that first specified a Section 1983 claim was timely.

### B. Excessive Force is Not Necessarily a Federal Claim

Plaintiff argues that his repeated references to "excessive force" in his original petition were sufficient to plead a federal claim that would trigger the removal period. The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule. Caterpillar, Inc. v. Williams, 107 S.Ct. 2425, 2429 (1987). "Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." Elam v. Kan. City S. Ry. Co., 635 F.3d 796, 803 (5th Cir. 2011). There is no federal question jurisdiction if the plaintiff properly pleads only a state law cause of action. Elam, 635 F.3d at 803. And "[a] plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." Id.; Settlement Funding, L.L.C. v. Rapid Settlements, Ltd., 851 F.3d 530, 535 (5th Cir. 2017).

Plaintiff's original petition did not specifically invoke any federal laws. To the contrary, it repeatedly invoked state law doctrines such as negligence and respondeat superior that are not even applicable under Section 1983. There was a greater hint of a federal claim in a state court petition that alleged the defendant police officers violated "civil and constitutional rights" and "acted under color of law," but the Fifth Circuit held in Cevallos v. Silva, 541 Fed. Appx. 390, 393 (5th Cir. 2013) that the petition did not plead a federal claim that would trigger removal.

Plaintiff's use of the words "excessive force" in his petition did not make the pleading reveal on its face that a federal claim was asserted. That argument was rejected in Quinn v. Guerrero, 863 F.3d 353, 359 (5th Cir. 2017), a case in which the plaintiff alleged police violently executed a search warrant on his home and shot him in retaliation for a prior civil rights suit. The original petition alleged that the police actions were intentional, tortious, and taken with malice. The district court opinion states that the original petition used the term "excessive force" at least 17 times. Quinn v. Guerrero, 2009 WL 5166223, *2 (E.D. Tex. 2009).

The defendants did not remove the case until after plaintiff filed an amended complaint in state court that specifically alleged claims under federal law such as Section 1983 and the Fourth Amendment. The plaintiff moved to remand on the ground the original petition suggested a federal claim and made the removal untimely. The Fifth Circuit affirmed the denial of that motion to remand. It discussed Cevallos v. Silva and concluded that "Quinn's references to 'excessive force' and the City's failure to supervise are similarly too ambiguous to allege a federal question." Quinn, 863 F.3d at 359. See also

Stinson v. Scoggins, 2008 WL 631204, *3 (W.D. La. 2008) (Hicks, J.) (vague references to deprivation of "civil rights and liberties" and "unlawful detention" were insufficient; such rights are also protected by state law).

Support for the removal is also found in Redus v. University of the Incarnate Word, 61 F. Supp. 3d 668 (W.D. Tex. 2014), a suit that began in state court and asserted claims of negligence, gross negligence, and respondeat superior liability against a campus police officer and his employer after the officer shot and killed a student. The defendants removed the case based on an assertion of federal question jurisdiction, even though the petition cited only Texas statutes and legal principles. The defendants argued that the plaintiffs' allegations of excessive force by a police officer should be construed as federal claims that supported removal.

The court disagreed, citing Quinn and a number of other decisions that have rejected arguments that a mere claim of excessive force is necessarily a federal claim. Among the cases cited was Lowe v. Police Department of Alexandria, 2010 WL 1740826 (W.D. La. 2010), in which the plaintiff filed suit in state court and alleged excessive force during an arrest but did not specifically invoke federal law. Magistrate Judge Kirk noted that Louisiana law recognizes the tort of "excessive force." The plaintiff's motion to remand was granted because his petition did not assert a federal claim that would support removal.

### C. Hall v. City of Alexandria is Not Persuasive

Plaintiff cites Hall v. City of Alexandria 111 F. Supp. 2d 785 (W.D. La. 2000), in which Judge Little considered a motion to remand the removal of a state court petition that alleged claims for false arrest and excessive force. He denied the motion to remand based

on the observation that the plaintiff prayed for punitive damages and attorney fees, remedies not afforded by state law but that were available under federal civil rights statutes. Hall is inapplicable and unpersuasive. First, Plaintiff in this case did not seek fees, punitive damages, or any other relief not available under Louisiana law.

Even had Plaintiff prayed for fees or punitive damages, Hall's rationale on that point was later undermined by In Re Hot-Hed, Inc., 477 F.3d 320 (5th Cir. 2007), where a state court petition that alleged state-law trademark violations was removed because it prayed for attorney's fees "as allowed for by law." Attorney fees were arguably not allowed by state law but were allowed by federal trademark law in exceptional cases. The Fifth Circuit granted a supervisory writ to reverse the district court and order the case remanded. It stated that a "request for attorney's fees cannot be a basis for federal jurisdiction." Id. at 324.

Hall also reasoned that the plaintiff had artfully crafted his petition and that a fair reading showed that the true basis (as revealed by the request for fees and punitive damages) was a federal law claim. But the artful pleading doctrine is now strictly limited to the few situations where federal law completely preempts state law, such as with ERISA or the Labor Management Relations Act. Bernhard v. Whitney National Bank, 523 F.3d 546, 551 (5th Cir. 2008). See Stinson, 2008 WL 631204, *4 (distinguishing Hall on these grounds). Hall is factually distinct, and its approach is in conflict with more recent decisions from the Fifth Circuit and other courts. It is not persuasive authority in this case.

### D. Johnson v. City of Shelby is Not Applicable

Plaintiffs also invoke Johnson v. City of Shelby, 135 S.Ct. 346 (2014). The plaintiffs in that case filed suit in federal court and alleged violations of their Fourteenth Amendment right to due process. The Fifth Circuit affirmed summary judgment for the defendants because the complaint did not specifically invoke 42 U.S.C. Section 1983. The Supreme Court summarily reversed because "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."

The undersigned reads Johnson as an application of the federal pleadings standard to a case in which the plaintiffs embraced and asserted a claim based on federal law, but their complaint was challenged for lack of citation to a particular statute. Johnson is not viewed as a silent, summary reversal of the Supreme Court's prior statements in cases such as Caterpillar that the plaintiff is the master of his complaint and may choose to assert only state law claims even though the facts alleged could support a federal claim. See Redus, 61 F. Supp. 3rd 678-79 (reaching the same conclusion) and Smith v. Sutherland Bldg. Material Centers L.P., 2017 WL 814134, *5 (W.D. La. 2017) (Perez-Montes, M.J.) (rejecting similar argument based on Johnson).

### E. Graham v. Connor is Not Applicable

Plaintiff argues that his allegations of excessive force "invoke analysis under the Fourth Amendment" because Graham v. Connor, 109 S.Ct. 1865 (1989) held that all claims that law enforcement used excessive force in the course of an arrest should be analyzed

under the Fourth Amendment. A review of the decision shows that it is not so broad as to foreclose state law claims for excessive force.

The plaintiff in Graham filed his action under Section 1983 against the officers who arrested him. He alleged that the officers used excessive force in violation of his rights under the Fourteenth Amendment's Due Process Clause. The Supreme Court clarified that such a claim is most properly characterized as one invoking the protections of the Fourth Amendment's prohibition against unreasonable seizures of the person. The Court concluded, "Today we . . . hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 109 S.Ct. at 1871 (Emphasis in original.)

Plaintiff quotes the language that all claims for excessive force should be analyzed under the Fourth Amendment and concludes that his claims must also be treated as Fourth Amendment claims despite his lack of mention of any federal law. Graham is not that broad. It was addressing an explicitly alleged Section 1983 claim and was merely deciding which provision of the Constitution was most applicable to that federal claim.

Nothing in Graham precluded the states from having their own excessive force tort doctrines and applying them in similar settings. Louisiana has done so, including when police use force that involve shooting. Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977); Dawson v. Falgout, 215 So.3d 373 (La. App. 5th Cir 2016). The elements of the state law tort claim and a Fourth Amendment claim are similar, but they remain separate

legal claims with different defenses. <u>Deshotels v. Marshall</u>, 454 Fed. Appx. 262 (5th Cir. 2011) (separately analyzing federal and state excessive force claims); <u>Lowe</u>, 2010 WL 1740826, *3 ("Louisiana law recognizes the tort of 'excessive force' and the Fifth Circuit recognizes that such claims may be alleged as arising under both § 1983 and Louisiana law.")

### F. The Acknowledgment Theory

Finally, Plaintiff argues that Defendants "acknowledged" that his original petition presented a federal claim when they served Interrogatory No. 10 and asked Plaintiff to describe each act that he contends violated his state or federal rights. The removal clock is not triggered by service of an initial petition unless that pleading reveals on its face that the plaintiff is asserting a cause of action based on federal law. The clock is not triggered by "other paper" until "receipt by the defendant" of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.

The interrogatory *drafted by Defendants* and served on Plaintiff did not meet either of those requirements. Plaintiff cites no authority to the contrary or that would support his acknowledgment theory of triggering the removal period. A plaintiff is the master of his complaint, so it is his actions rather than those of the defendants that will or will not trigger the removal period by pleading a federal claim. Had Plaintiff answered the interrogatory by stating that he did not rely on any federal law claims, this case would almost certainly remain in state court, and it would not be removable.

**Effect of Dismissal of the Federal Claims**

It is not unheard of for a plaintiff who has carefully crafted a petition that relies solely on state law to find himself removed to federal court after he later inadvertently invokes federal law. Some plaintiffs in that position elect to embrace the federal claims and litigate both them and the state law claims in federal court. Others seek to return to state court by immediately dismissing any federal claims and asking the federal court to decline to exercise supplemental jurisdiction over their state law claims.

Such a post-removal stripping of federal claims does not divest the district court of subject matter jurisdiction if there was a basis for jurisdiction at the time of removal. Hook v. Morrison Milling Co., 38 F.3d 776, 780 (5th Cir. 1994). But if the court dismisses all federal claims at an early stage of the case, the general rule is to decline to exercise supplemental jurisdiction over any state law claims. Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) (district court abused its discretion in retaining jurisdiction over state law claims after it dismissed federal claims early in the case; jury verdict and judgment vacated); Engstrom v. First National Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995) (district court did not err in remanding state law claims after federal claims were dismissed on summary judgment).

The federal courts often dismiss without prejudice (or remand in removed cases) state law claims after all federal claims have been dismissed. The dismissal of the federal claims usually comes after contested motion practice, but the same policy considerations apply when a plaintiff voluntarily concedes those same claims even earlier in the federal proceedings. Rasco v. Bossier Casino Venture, Inc., 2018 WL 1734636, *3-4 (W.D. La.

2018). A plaintiff who elects to dismiss federal claims and seek remand should take that path as quickly as possible; dismissal of the federal claims late in the litigation is less likely to result in remand of the state law claims.

Accordingly,

It is recommended that Plaintiff's **Motion to Remand (Doc. 8) be denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of October, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge