UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| BRIAN STEVEN POOLE | CIVIL ACTION NO. 18-1125 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

_____

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by the City of Shreveport ("the City") and Corporal Jon Briceno ("Briceno") (herein collectively referred to as "Defendants"). See Record Document 48. Plaintiff, Brian Steven Poole ("Poole"), opposes the motion.[1] See Record Document 54. For the reasons assigned herein, Defendants' motion is hereby **DENIED IN PART** and **GRANTED IN PART**.[2]

### BACKGROUND INFORMATION

The events in question occurred in the early morning hours of Friday, March 31, 2017, in the Broadmoor neighborhood of Shreveport, Louisiana. See Record Document 48-2 at ¶1. At the time, Poole had been living at a sober living home after he was released from a stint of incarceration. See id. at ¶2. Unfortunately, Poole had relapsed and used narcotics on the day prior to the events of this case. See id. On the night in question, Poole was driving around the

---

[1] Poole died on February 4, 2020. His estate, represented by independent executrix Janet Irene Creech Poole, has been substituted as the Plaintiff in this matter. See Record Documents 44 and 45.

[2] Defendants also filed a Daubert Motion to Exclude the Testimony and Opinions of Richard Brzecek (Record Document 58) and a Daubert Motion to Exclude Testimony and Exhibits of Marion Marks (Record Document 59). The Court did not rely on the testimony, opinions, or exhibits mentioned in Defendants' motions in reaching its decision today. The Court will address both Daubert motions at the pretrial conference.

Broadmoor neighborhood. See id. at ¶1. Poole was aware that he would be drug tested upon his return to the sober living home, so he drove for hours, having "suicidal thoughts" and not wanting to "face…family." See id. at ¶2. At approximately 1:37 a.m., Shreveport Police Department ("SPD") officers were dispatched to 433 Albany Avenue in reference to a suspicious vehicle. See id. at ¶3. The complainant, who was concerned about recent break-ins in the area, reported a silver 2-door lowered truck that had made several passes down her street. See id. at ¶4.

Briceno responded to the dispatch call with his police vehicle cameras activated, and located a light-colored, small 2-door truck at a stop sign. See id. at ¶6. The truck was being driven by Poole. Poole turned right at the stop sign, and Briceno activated his lights and sirens. See id. at ¶7. Poole immediately straightened his vehicle away from Briceno and drove into the parking lot of Querbes Golf Course. See id. Poole drove slowly through the parking lot before exiting and turning left onto Cornwell Avenue. See id. at ¶8. Briceno's lights and sirens remained on, but Poole continued to drive slowly through the residential area. See id. at ¶9. During the pursuit, Briceno saw Poole repeatedly reaching for something inside his vehicle with his right arm. See id. at ¶10. At least six police vehicles joined the pursuit, all with lights and sirens activated, but Poole refused to stop his vehicle, leading SPD officers on a 15-minute low-speed pursuit. See id. at ¶¶11, 13. SPD officers described Poole as "slow-rolling" his vehicle and "refusing to stop." See Record Document 48-4 at 31.

Poole was afraid to stop because he knew he had violated his parole and would go back to prison. See Record Document 48-2 at ¶14. Poole continued to drive through the Broadmoor and South Highland neighborhoods until he reached Line Avenue, where he turned left towards a popular commercial area. See id. at ¶15. Officers sped ahead of the pursuit and attempted to set

spike strips on Line Avenue to puncture and deflate Poole's tires, but Poole swerved into the wrong lane of traffic and proceeded through a red light. See id. at ¶16. The video from Briceno's police vehicle also shows Poole driving slowly through a residential yard to avoid construction that was blocking the street. See Record Document 50, Exs. A-1 and A-2. Poole finally came to a stop at the corner of Drexel Street and Thornhill Avenue. See Record Document 48-2 at ¶17. Poole jumped out of his vehicle and reached into the bed of his truck. See id. at ¶19. Briceno then exited his vehicle in a manner so abruptly that he failed to place the vehicle in park, causing his vehicle to roll forward and bump into the back of Poole's truck. See id. at ¶22.

The parties dispute the events that followed Poole's exit from his truck. Briceno contends that he believed Poole had reached into the bed of his truck to retrieve a weapon, and that Poole intended to shoot him. See Record Document 48-1 at 10. Briceno claims that he drew his weapon and gave Poole commands to "get on the ground" and "show me your hands." See id. Briceno states that he perceived Poole as a threat to his life, so he fired six shots at Poole. See id. at 11. Importantly, Briceno maintains that he could not see Poole's hands when he began firing because of his position in relation to the open door of Poole's truck. See id. at 10. In contrast, Poole testified that he got out of his truck and reached into the truck bed to grab a drink so that he could take an entire bottle of prescription pills in his suicidal state of mind. See Record Document 48-7 at 6. Poole argues that Briceno could see that his hands were empty, making the use of lethal force excessive. See Record Document 54 at 15.

Poole was struck by four of the six bullets fired by Briceno, three times in the back and once in his left thigh. See Record Document 48-14. Poole was placed in custody and a call was placed for emergency medical assistance. Another officer, Sergeant Clint Cain ("Cain") a police

3

supervisor and registered nurse, arrived on the scene a few minutes later and began providing first aid. See Record Document 48-8 at 5-8. Poole was eventually transported to the emergency room at University Health. See Record Document 48-14. Poole was arrested and charged in the First Judicial District Court, Caddo Parish, Louisiana, with Aggravated Flight from an Officer in violation of Louisiana Revised Statute 14:108.1(C). See Record Document 48-2 at ¶37. On January 29, 2018, Poole entered a plea of guilty to the charge and was sentenced to hard labor for two and one-half years. See id. at ¶38.

Poole filed a suit for damages against Briceno in his individual and official capacities, and against the City asserting the following: (1) a claim against Briceno for excessive force in violation of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and Article I, Section 5 of the Louisiana Constitution; (2) negligent training and supervision claims against the City pursuant to 42 U.S.C. § 1983; (3) assault, battery, negligence, and intentional infliction of emotional distress claims against Briceno under state law; and (4) claims that the City is vicariously liable for Briceno's alleged tortious acts pursuant to Louisiana Civil Code article 2320, and the doctrine of respondeat superior. See Record Document 22. Defendants deny the allegations, claim that Briceno is entitled to qualified immunity, and request that the Court dismiss all of Poole's claims. See Record Document 23.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." EEOC v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir. 2014).

When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. See Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2,

the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

**I.     Heck Doctrine**

In Heck v. Humphrey, a case involving a malicious prosecution claim, the Supreme Court found that civil tort actions, including section 1983 claims, are inappropriate vehicles to challenge the validity of a criminal judgment. See Heck, 512 U.S. 477, 114 S.Ct. 2364 (1994). The Court held that "in order to recover damages for allegedly unconstitutional imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486-87, 2372. "Heck requires the district court to consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Ballard v. Burton, 444 F.3d 391, 396 (5th Cir. 2006) (quoting Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995)).

Defendants argue that in this case, Poole's claim of excessive force must be dismissed because such a claim necessarily impugns the validity of his underlying conviction for Aggravated Flight from an Officer, an offense that involves endangerment to human life. See

6

Record Document 48-1 at 22. Plaintiff argues that the underlying conviction does not bar a claim for excessive force because the factual basis for the underlying charge is temporally and conceptually distinct from his excessive force claim. See Record Document 54 at 22.

Poole was convicted of violating Louisiana Revised Statute 14:108.1(C), Aggravated Flight from an Officer, which states in relevant part:

> (C) Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop [] under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver [] committed an offense [].

La. R.S. 14:108.1(C). Defendants note that the fact of this case are similar to those in Baranco v. Wilson, No. 16-00573, 2018 WL 3076724 (M.D. La. June 21, 2018), a case from Baton Rouge, Louisiana, where an excessive force claim was barred under Heck based on that plaintiff's underlying conviction for Aggravated Flight from an Officer. See Record Document 48-1 at 22. The Baranco court dismissed the claim, finding that "by pleading guilty to Aggravated Flight from an Officer [] Plaintiff essentially admitted that the officer acted reasonably in using deadly force to effectuate his arrest." Baranco, at *6. The court noted that Louisiana Revised Statute 14:20(2) entitles police officers to use deadly force to prevent a felony involving danger to life or great bodily harm, such that a claim for excessive force would undermine the validity of Baranco's conviction. See id.

Defendants argue that like the officers in Baranco, Briceno was authorized to use lethal force in order to prevent Poole from placing human life at risk, and Poole's claim for excessive force must be barred under Heck because it questions his conviction. See Record Document 48-1 at 23. The Court disagrees. The facts of the Baranco case are distinct from this case. The factual basis underpinning Baranco's conviction indicates that Baranco was inside of his vehicle

7

and actively trying to flee from the officers when they opened fire, striking Baranco inside of his vehicle during the course of the pursuit.  See Baranco at *7.  This is distinct from the facts in this case.[3]  The Court does not have documentation of the factual basis for Poole's guilty plea, only a docket entry indicating that the plea was entered.  See Record Document 48-16 at 2.  However, the video evidence submitted by Defendants clearly shows that Poole's vehicle was parked and Poole was outside of the vehicle when Briceno opened fire.  See Record Document 50, Exs. A-1 and G-3.  Thus, Poole was not, at the time of the shooting, a driver intentionally refusing to bring his vehicle to a stop, which is the statutory language of the offense to which Poole pleaded guilty.  See La. R.S. 14:108.1(C).  Accordingly, the Court finds that Poole's claim of excessive force does not impugn the validity of his criminal conviction, and is not barred by the Heck doctrine.  Defendants' motion for summary judgment on the basis of the Heck doctrine is **DENIED**.

## II.    Qualified Immunity

The doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009).  It is well established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

---

[3]  The facts in this case are also distinct from those in Connors v. Graves, 538 F.3d 373 (5th Cir. 2008), another excessive force case where the plaintiff pleaded guilty to Louisiana Revised Statute 14:108.1(C), and the Heck doctrine was found to bar an excessive force claim.  The plaintiff in Connors was actively driving his vehicle when police opened fire and shot him in the arm.  See id. at 375.

8

Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Qualified immunity is "immunity from suit rather than a mere defense to liability." Id. Accordingly, the issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. See Porter v. Epps, 659 F.3d 440, 445 (5th Cir. 2011). Once qualified immunity has been raised by a defendant, the burden is then upon the plaintiff to demonstrate the inapplicability of the defense. See McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

Courts apply a two-step inquiry to determine whether an officer is entitled to summary judgment on the basis of qualified immunity. See Romero v. City of Grapevine, Tex., 888 F.3d 170, 176 (5th Cir. 2018). First, the Court asks whether "taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right[?]" Id. (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). "Second, we ask whether the right is clearly established at the time of the violation." Id. (quoting Tolan v. Cotton, 572 U.S. 650, 656, 134 S.Ct. 1861 (2014)). The Court may begin its analysis of qualified immunity with either prong. See Gibson v. Kilpatrick, 773 F.3d 661, 666 (5th Cir. 2014). A plaintiff satisfies the first prong at the summary judgment phase by establishing that genuine issues of material fact exist regarding the reasonableness of the official's conduct. See King v. Handorf, 821 F.3d 650, 654 (5th Cir. 2016). The proof need not be absolute, but it must consist of more than mere allegations. See id. The second prong requires that the constitutional right was sufficiently clear to put a reasonable official on notice that certain conduct would violate that right. See Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir. 1998). An officer is entitled to qualified immunity if there was no violation, or if the conduct in question did not violate law clearly established at the time. See Cole v. Carson, 935 F.3d 444, 451 (5th Cir. 2019).

### A. Whether Poole's constitutional rights were violated

Poole has asserted a claim for excessive force. As such, the Court's first question is whether Briceno violated Poole's Fourth Amendment rights. See Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867-68 (1989). An arrestee has the right to be free from excessive force during a seizure; this is clearly established. See id. at 394, 1871; U.S. Const. Amend. IV. To properly state a claim for excessive force, Poole must demonstrate: (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. See Romero, 888 F.3d at 176. When deadly force is employed, as it clearly was in this case, the Court's usual balancing test for what is considered objectively reasonable is constrained. See Flores v. City of Palacios, 381 F.3d 391, 399 (5th Cir. 2004). "The use of deadly force violates the Fourth Amendment unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" Romero, 888 F.3d at 176 (quoting Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985)).

"Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." Amador v. Vasquez, 961 F.3d 721, 727 (5th Cir. 2020). "In making this determination, a court should consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 727-28. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." Id. at 728. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. In cases of deadly force, the excessive force inquiry "is confined to whether the officers or other persons were in danger at the moment of the threat that resulted in the officer's use of deadly force." Id. (quoting Rockwell v. Brown, 664 F.3d 985, 992-93 (5th Cir. 2011)).

Briceno argues that his use of deadly force was objectively reasonable because he believed that Poole intended to kill him, and the use of deadly force was necessary to preserve his own life. See Record Document 48-1 at 18. Briceno provided testimony that an "ordinary citizen … doesn't ride around at one o'clock in the morning driving and acting suspiciously," and the ones that do "don't not stop for the police." See id.; Record Document 48-6 at 86-87. Briceno also testified that "an ordinary citizen doesn't reach for items" while being pursued by police, an action that Briceno interpreted as Poole reaching for a weapon. See id. Briceno also testified that Poole's erratic action of jumping out of his truck and reaching into the truck bed to look for something caused him to believe Poole had reached for a weapon in the bed of his truck and was turning to fire at him. See id. at 87. Importantly, Briceno maintains that he could not see Poole's hands after Poole reached into the truck-bed because he had moved to Poole's left side, thus partially obstructing his view. See id. at 53, 87; Record Document 48-1 at 10. Briceno also notes that Poole ignored his verbal commands to "get on the ground" and "show me your hands." See Record Document 48-1 at 10; Record Document 50, Ex. A-1. Briceno testified that Poole had his back towards him, but turned slightly when he opened the door of his truck. See Record Document 48-6 at 15. At this point, Briceno stated that he "felt like he [Poole] was getting ready to engage me and to kill me . . . [a]nd so … I used force." See id.

11

In contrast, Poole argues that when he exited his vehicle his hands were clearly visible and empty as seen in the video footage. See Record Document 54 at 6-7. Poole also argues that although he reached into the open bed of his pickup truck, he retrieved nothing, instead bringing his empty hands to rest on the side rail of his pickup truck. See id. Poole contends that his hands were visibly empty to Briceno, such that Briceno was aware that Poole was unarmed when he fired six shots, striking him in the back and thigh. See id. at 7.

After a review of the video evidence provided by the Defendants, the Court finds that genuine issues of fact remain as to whether Poole's constitutional rights were violated. See Record Document 50, Exs. A-1 and G-3. The videos do not unquestionably demonstrate that Briceno gave Poole warning commands to "get on the ground" and "show me your hands" before he opened fire on Poole. It appears that Briceno may have shouted "hey…get down" a split second prior to opening fire on Poole when he began moving to get back into his truck. However, a jury should determine to what extent Briceno provided a warning, if any. Also, the video evidence does not provide clarity to the Court as to whether Briceno could see that Poole's hands were empty when he opened fire. Finally, it appears from the video evidence that Poole's body may have been turned away from Briceno when the shots were fired, which is relevant to whether Poole posed a threat to Briceno. All of the above are genuine issues of material fact that must be decided by a jury to determine whether Briceno's actions were objectively reasonable.

    **B.    Whether Poole's Fourth Amendment Right was Clearly Established**

The Court's inquiry regarding the availability of qualified immunity also requires a determination of whether Poole's constitutional right was clearly established at the time of the incident. If the right was not clearly established then qualified immunity will protect Briceno. "A clearly established right is one that is 'sufficiently clear that every reasonable official would

have understood that what he is doing violates that right.'" Mullenix v. Luna, 577 U.S. 7, 11, 136 S.Ct. 305, 308 (2015) (quoting Richelle v. Howards, 566 U.S. 658, 664, 132 S.Ct. 2088 (2012)). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 12 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074 (2011)). "In other words, existing precedent must squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who 'knowingly violates the law' would have behaved as the official did." Joseph v. Bartlett, --- F.3d ---, No. 19-30014, 2020 WL 6817823, at *12 (5th Cir. 2020) (citing Mullenix, 577 U.S. at 11, 136 S.Ct. at 308). Poole was shot on March 31, 2017; thus, the Court must examine the law as it existed prior to that date. See Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.

In Tennessee v. Garner, the Supreme Court "announced the principle that the use of deadly force is permitted only to protect the life of the shooting officer or others: 'Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.'" Cole, 935 F.3d at 453 (quoting Garner, 471 U.S. at 11). The fact that Poole was attempting to get back into his truck to presumably continue to try to evade the police does not, on its own, make the use of deadly force an appropriate response. See Lytle v. Bexar County, Tex., 560 F.3d 404, 416 (5th Cir. 2009). "[A] suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is per se reasonable." Id. Rather, the facts of a particular case must be examined to determine if the use of deadly force was reasonable. See id. Thus, the Court finds that it was clearly established at the time of Poole's injury that it would have been unreasonable for a police officer to use deadly force against a fleeing suspect if the suspect did not present sufficient threat of harm to the officer or to others.

The Court notes that there is a second line of cases that have all found qualified immunity to be appropriate, such that the law did not clearly establish a constitutional right, in situations involving deadly force against unarmed suspects. The cases involve circumstances where an unarmed suspect, after receiving a warning, moved out of the officer's line of sight in such a manner that the officer reasonably believed the suspect was reaching for a weapon. See Manis v. Lawson, 585 F.3d 839, 844 (5th Cir. 2009) (qualified immunity protected officer when suspect reached under his car seat and appeared to retrieve a weapon after officer ordered suspect to show his hands despite there being no weapon); Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379 (5th Cir. 2009) (officer entitled to qualified immunity after shooting a suspect who was instructed to "show his hands" but instead placed his hand inside a boot, which the officer believed contained a weapon, although no weapon was found); Salazar-Limon v. City of Houston, 826 F.3d 272 (5th Cir. 2016) (qualified immunity found to protect police officer who shot an unarmed suspect who reached toward his waistband, which was covered by the suspect's untucked shirt, because it was reasonable for officer to believe suspect was retrieving a weapon from his waistband). However, the Court does not believe these cases require a finding that Briceno is entitled to qualified immunity because issues of fact remain as to whether Briceno had an unobstructed line of sight and could see that Poole's hands were empty.

Accordingly, because the Court has found that genuine issues of material fact remain as to whether Poole's constitutional rights were violated and that the law was clearly established at the time of the shooting, Defendants' motion for summary judgment on the basis of qualified immunity is **DENIED**.

### III. <u>Monell</u> Claims

Poole has asserted claims against the City under 42 U.S.C. § 1983 for the City's alleged failure to properly train or supervise Briceno. <u>See</u> Record Document 22 at ¶¶ 81-95. Specifically, Poole alleges that the City has a custom or policy of condoning the use of excessive force by its officers without taking the appropriate action to correct and prevent the use of excessive force, which is demonstrated by Briceno's history of using excessive force against the public. <u>See id.</u> at ¶¶ 84-90. Poole also alleges that the City failed to properly train, supervise, investigate, and correct improper actions by its employees, which resulted in the direct and proximate cause of his injuries. <u>See id.</u> The City has moved for summary judgment dismissal of these claims. <u>See</u> Record Document 48-1 at 23.

A municipality cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of its employees under the traditional theory of respondeat superior. <u>See</u> <u>Monell v. Dept. of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978).[4] However, a municipality may be held liable under 42 U.S.C. § 1983 if a plaintiff establishes the following three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001). An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations," or by a custom that is such a persistent and widespread practice that, although not officially promulgated, it fairly represents a municipal policy. <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984). To establish the "moving

---

[4] Poole has asserted a state law claim against the City under the theory of respondeat superior. In contrast to claims pursuant to 42 U.S.C. § 1983, Louisiana law does not shield municipalities from vicarious liability, and a city may be vicariously liable for the tortious acts of its employees acting within the scope of their employment. <u>See</u> La. Civil Code art. 2320; <u>Deville v. Marcantel</u>, 567 F.3d 156, 174 (5th Cir. 2009).

15

force" requirement, a plaintiff must show that the municipality's policy or custom that caused the alleged harm was either unconstitutional or "promulgated with deliberate indifference." Piotrowski, 237 F.3d at 578. Where a policy is facially constitutional, a plaintiff must demonstrate that the policy was promulgated with deliberate indifference that a known or obvious unconstitutional consequence would result. Id. at 579.

Defendants argue that Poole's claims against the City must be dismissed because he cannot point to an official policy or custom that allegedly caused his constitutional deprivation. See Record Document 48-1 at 25. Defendants also argue that there is no evidence that any City official acted with deliberate indifference. See id. at 26. Conversely, Poole argues that the City had a custom of showing deliberate indifference to the constitutional rights of its citizens because of Briceno's prior history of using excessive force. See Record Document 54 at 24. In support, Poole directs the Court to disciplinary records involving Briceno. See id., Ex. D. The records indicate that on March 9, 2011, Briceno was disciplined with a "3 day fine" for "use of force." See id. No other details are evident in the exhibits provided. The records also provide that on May 21, 2013, two fellow officers reported Briceno's use of excessive force during the course of an arrest for allegedly punching a suspect who was not resisting, resulting in a "5 day fine." See id.

A pattern can be used to establish an official policy when "it is so common and well-settled as to constitute a custom that fairly represents municipal policy." See Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 850 (5th Cir. 2009) (quoting Webster, 735 F.2d at 841). If prior incidents are used to establish a pattern they must occur for a duration of time and at such a frequency that the municipality can be attributed with knowledge and acceptance of the practice

16

of its employees. Id. at 850. Thus, a plaintiff must establish a pattern beyond a single case with both similarity and specificity. Id. at 850-51.

While the Court finds it noteworthy that Briceno had two previous notations in his employment record for the use of excessive force in his six-year tenure with SPD before the events of this case, this alone is insufficient to sustain a claim for municipal liability. It appears to the Court that the alleged policy at issue is the City's decision to allow Briceno to remain a member of the police force interacting with the public. Because there is no official policy identified, there must be a custom so persistent and widespread that although not promulgated, it fairly represents a policy of the City. There is no evidence of a widespread or persistent custom by the City to allow officers with complaints of excessive force to remain members of the police force. Briceno's two previous uses of force during the six-year period before this incident did not occur with such a frequency as to indicate that the City accepted the use of excessive force from its employees. Moreover, no alleged policymaker has been identified as having made the alleged policy or custom to retain Briceno as an officer.

Poole also asserts a claim for failure to train, which requires a plaintiff to prove: "(1) that the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate policy directly caused the violation in question." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 170 (5th Cir. 2010). "[A] plaintiff must allege with specificity how a particular training program is defective." Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005). A plaintiff's vague assertions about a need for better training is insufficient to support a failure to train claim. See City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91, 109 S.Ct. 1197, 1205 (1989). Because the stringent standard of deliberate indifference is applied to determine municipality fault, "a pattern

17

of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." Pena v. City of Rio Grande City, 879 F.3d 613, 623 (5th Cir. 2018).

Defendants argue that there is no evidence that any City official acted with deliberate indifference with regard to Briceno's training. See Record Document 48-1 at 26. Defendants note that Briceno was certified annually by the Louisiana Peace Officer Standards and Training Council ("P.O.S.T."), and maintained yearly firearms training. See Record Document 48-4; Record Document 48-5. Defendants have also provided evidence that March 31, 2017 was the first time Briceno used deadly force against a suspect. See Record Document 48-6 at 91-92.

Poole has not identified for the Court any particular deficiency in Briceno's training. Rather, Poole argues that the lack of training is evident through Briceno's alleged use of excessive force in this instance. As noted, such vague assertions will not suffice. Additionally, Poole has not provided evidence of similar constitutional violations sufficient to establish deliberate indifference by the City concerning the training of its officers on the use of deadly force. This is insufficient to establish that the City is liable for failing to train.

A claim for a municipality's alleged failure to supervise an officer accused of using excessive force requires a showing that: (1) a particular supervisor failed to supervise the officer, (2) a causal link exists between the failure to supervise and a violation of plaintiff's rights; and (3) the failure to supervise was done so with deliberate indifference to the risk of a constitutional violation. See Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Deliberate indifference requires that it must have been obvious to the City that the highly predictable consequence of not supervising its officers would be that force would be applied in a manner that would place its citizens' Fourth Amendment rights at risk. See Peterson, 588 F.3d at 850.

18

Poole's claim against the City based on a lack of supervision is also insufficient. Poole has not identified a supervisor who allegedly failed to properly supervise Briceno, nor has he set forth the causal link between the alleged lack of supervision and the violation of his rights. As for a showing of deliberate indifference, the Court finds that there is insufficient evidence to suggest that a highly predictable consequence of failing to supervise Briceno would be to risk the use of excessive force upon the citizens of Shreveport. Indeed, the evidence suggests the contrary, that the City was not deliberately indifferent in its supervision because it took steps in the past to discipline Briceno as noted in his employment records.

For these reasons, Defendants' motion for summary judgment dismissal of Poole's 42 U.S.C. § 1983 Monell claims against the City is **GRANTED**.

### IV. State Law Claims

Defendants argue that Poole's state law claims against Briceno for assault, battery, negligence, and intentional infliction of emotional distress must be dismissed because Briceno's use of deadly force was justified and not excessive. See Record Document 48-1 at 26. Because the Court has found that genuine issues of material fact remain regarding Poole's claims of excessive force, these state law claims remain viable at this time. Poole's state law claims against the City pursuant to Louisiana Civil Code article 2320 and the doctrine of respondeat superior are dependent upon the outcome of his tort claims against Briceno. As such, these claims also remain viable at this time.

### CONCLUSION

Defendants' Motion for Summary Judgment (Record Document 48) is hereby **DENIED IN PART** and **GRANTED IN PART**. Defendants' motion for summary judgment on the basis of the Heck doctrine is **DENIED**. The Defendants' motion for summary judgment on the basis

19

of qualified immunity is **DENIED**. The Defendants' motion for summary judgment of Poole's Monell claims against the City pursuant to 42 U.S.C. § 1983 is **GRANTED**, and the claims are hereby **DISMISSED WITH PREJUDICE**. The Defendants' motion for summary judgment of Poole's remaining state law claims is **DENIED**. An order consistent with this ruling shall issue forthwith.

    **THUS DONE AND SIGNED**, this 30th day of December, 2020.

*[Signature: Donald E Walter]*

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE