## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| BRIAN STEVEN POOLE | CIVIL ACTION NO. 18-1125 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

### <u>MEMORANDUM</u>

The above-captioned matter was heard by bench trial February 14-16, 2022.   The Court provided an oral ruling in favor of the Defendants from the bench and will now provide findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).   The Court notes that it has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331, and 42 U.S.C. § 1983, and retains supplemental jurisdiction over the remaining state causes of action by virtue of 28 U.S.C. § 1367.

The facts of this case are tragic for all involved.   On March 31, 2017, Brian Steven Poole ("Poole"), who had been residing in a sober living home after he was released from incarceration, relapsed and used a controlled substance.   <u>See</u> Record Document 82 at D.   Poole, aware that he would be drug-tested upon his return to the sober living home, was having suicidal thoughts because he knew that a positive drug test would violate his parole and he would likely go back to prison.   <u>See id.</u>   Poole, worried about returning to the sober living home, drove around for hours. <u>See id.</u>

During this time a resident in the Broadmoor neighborhood in Shreveport, Louisiana, concerned about recent break-ins, alerted the Shreveport Police Department ("SPD") of a silver 2-door lowered truck that had made several passes down her street, and at 1:37 a.m., SPD patrol

units were dispatched to the neighborhood.  See id.  Corporal Jon Briceno ("Briceno") was in the neighborhood with his dashcam activated.  See id.   He encountered Poole, who was driving a light-colored small truck.  See id.   Briceno turned on his emergency lights and attempted a traffic stop.  See id.  Poole did not stop.  Instead, he continued to drive around the Broadmoor and South Highlands neighborhoods.  See id.

When Poole failed to stop for Briceno, a low-speed pursuit began, with six patrol cars eventually responding to the chase.  See id.  The dashcam video reveals that Poole was driving between 15-20 miles per hour.  See Def. Ex. 1; Def. Ex. 2.   It also reveals that Poole ran stop signs, a red light, drove through two residential yards, and crossed into the wrong lane of traffic on a major thoroughfare to avoid hitting spike strips deployed by SPD.  See id.  The dashcam video contains several references by Briceno that Poole was reaching for something as he drove.  See id.  After approximately 15 minutes, Poole stopped in a residential area at the intersection of Thornhill and Drexel.  See Record Document 82 at D.

Within 8 seconds, the following series of events occurred.  Poole stopped his vehicle, abruptly exited his vehicle, and reached into the bed of his truck.  See Def. Ex. 1; Def. Ex. 2. Briceno stopped his vehicle, quickly exited his vehicle, moved to the left side of the vehicle door, and drew his weapon.  See id.   The dashcam video shows that Poole was reaching into the bed of his truck as Briceno was exiting his vehicle.  See id.  Briceno testified that he shouted a command to Poole to "show me your hands."   The dashcam video corroborates that Briceno shouted at Poole, but the unfiltered audio is unintelligible.  See id.  The video also shows that Poole retrieved nothing from the back of his truck.  See id.  As Briceno shouted, Poole placed his right hand on the edge of the truck bed as his left hand reached for the truck door, and Poole turned his head in Briceno's direction.  See id.  As Poole opened the truck door, Briceno began firing his

weapon.  See id.   Briceno fired six shots, hitting Poole three times in the back and once in the back of his thigh.  See Record Document 82 at D.

Poole filed suit against Briceno and the City of Shreveport.  The claims remaining for the Court's determination are: (1) excessive force against Briceno pursuant to 42 U.S.C. § 1983, (2) unreasonable seizure pursuant to Article I, Section 5 of the Louisiana Constitution, (3) assault, battery, negligence, and intentional infliction of emotional distress against Briceno under Louisiana law; and (4) vicarious liability against the City of Shreveport pursuant to Louisiana Civil Code article 2320.[1]

Claims asserted pursuant to 42 U.S.C. § 1983 for excessive force are governed by the Fourth Amendment's right to be free from unreasonable seizure. See Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).   To prove an excessive force claim a plaintiff must show by a preponderance of the evidence: (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was clearly unreasonable.  See Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009).   Excessive force claims ordinarily examine the "totality of the circumstances" to determine whether an officer's actions were objectively unreasonable.  Garza v. Briones, 943 F.3d 740, 745 (5th Cir. 2019).   However, when an officer uses deadly force, that "objective reasonableness" balancing test is constrained. Id.  In cases involving the use of deadly force, such force is considered excessive and unreasonable

---

[1]  The parties agreed during the trial that the state law claims were dependent on the validity of the 42 U.S.C. § 1983 claim.   See Bench trial Day 1.  Louisiana's excessive force law mirrors its federal counterpart.  See Deville v. Marcantel, 567 F.3d 156, 172 (5th Cir. 2009).  If Briceno did not violate the Fourth Amendment, then he did not violate Article I, Section 5 of the Louisiana Constitution.  Likewise, Poole's claims for assault, battery, negligence, and infliction of emotional distress must also be dismissed.  In the absence of a viable use of excessive force by Briceno, Poole's tort-based claims must fail.  See Wagster v. Gautreaux, No. 12-0011, 2013 WL 6194516 at *15 (M.D. La. Nov. 26, 2013).  Moreover, because Briceno is not liable to Poole, the City of Shreveport cannot be held vicariously liable.

3

unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.  See id.

In making this determination the Court must look at the case from the perspective of a reasonable officer on the scene, paying careful attention to the facts and circumstances of this particular case.  See id.  The Court must only consider the facts "knowable to the officer" at the time that force was used and must be careful to avoid second-guessing the officer's assessment of the danger presented by a particular situation.  Id.  The reasonableness of the deadly force is measured "at the time of the incident."  Amador v. Vasquez, 961 F.3d 721, 728 (5th Cir. 2020). That is, the focus of the inquiry should be on the act that led the officer to discharge his weapon. Id.  However, the Court must also consider all of the circumstances leading up to the moment deadly force is used because those circumstances inform the reasonableness of the officer's decision-making.  See Romero v. City of Grapevine, 888 F.3d 170, 177 (5th Cir. 2018).

The Court must also determine whether Briceno is entitled to qualified immunity, which would bar liability if Briceno violated Poole's Fourth Amendment rights by using excessive force. Qualified immunity protects public officials from suit and liability under section 1983 unless their conduct violates a clearly established right.  See Garza, 943 F.3d at 744.  Qualified immunity applies if a reasonable officer could have believed that shooting Poole was lawful in light of clearly established law and the information Briceno possessed at the time of the shooting.  See Romero, 888 F.3d at 176.  Qualified immunity will not shield Briceno if a reasonable officer with the same information could not have believed that his actions were lawful.  It is Poole's burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case.  See id.

Law enforcement officers are presumed to know the clearly established constitutional rights of individuals they encounter.  In this case, it is clearly established law that it would be

unreasonable for an officer to seize an unarmed, nondangerous suspect by shooting him.  See

Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701 (1985).  It would also be a violation of

clearly established law to shoot a visibly unarmed suspect who was moving away from everyone

present at the scene.  See id.; Roque v. Harvel, 993 F.3d 325, 339 (5th Cir. 2021).

  As the Court has noted, this case is a tragedy - a series of events that leads to an inevitable

unfortunate result.   When Poole first encountered Briceno he decided not to stop his vehicle.   A

lengthy low-speed chase ensued, during which time Poole is seen reaching for something in his

vehicle.   After more than 15 minutes, Poole finally stops his vehicle.  Within 8 seconds Poole

exits his truck, fumbles around in the bed of the pickup for something, comes up empty-handed,

turns toward the cab of the truck, opens the truck door, and is shot by Briceno.   The Court knows

that Poole had no weapon in his truck, and that he reached into the bed of his truck to locate a

drink so that he could take a bottle of prescription pills.

  However, the Court must consider what Briceno knew at the time of the shooting.   During

the chase, Briceno witnessed Poole reaching across the seat several times.   The Court knows that

Poole was only reaching for a bottle of medication, but Briceno did not know that during the chase.

Briceno reasonably thought that Poole was reaching for a weapon based on his training and

experience.   This is supported by Briceno's radio calls warning other officers that Poole was

reaching for something in the cab.   When the truck stops, Poole reaches into the truck bed, but

finds nothing and turns toward the cab.   At the same time, Briceno has exited his vehicle and

assumed the firing position, as he was trained to do.

  This case hinges on whether Briceno could see that both of Poole's hands were empty

before he fired the first shot.  Briceno testified adamantly that he could not see Poole's left hand.

The Court is also cognizant of the circumstances confronting Briceno at the time of the shooting.

It was dark and the lights from the police vehicles were flashing.  While this Court was able to see that Poole's hands were empty at the time of the shooting, Briceno did not have the leisure to view the dashcam video numerous times[2] or engage in frame-by-frame comparisons to see exactly what was happening in that moment.   As such, the Court believes that Briceno did not see Poole's left hand, nor did he deduce that Poole's left hand must have been empty because he was using it to open the truck door.   Briceno had a mere moment to decide whether to use deadly force, and he responded as any other reasonable policeman in the same situation would have done.

The Court finds that Briceno reasonably believed that Poole was reaching for a gun when he reached into the back of the truck.  The testimony reveals that when Briceno was faced with this perceived threat Briceno relied on his training.  The Court found the testimony of defendants' use of force expert, Kerry Najolia, particularly compelling.   Najolia conceded that if the Court only considered the dashcam footage in deciding liability then the shooting of Poole would have been unjustified.  However, Najolia explained that Poole's actions before the shooting (evading police, reaching across the seat numerous times, and quickly jumping out of his truck and reaching into the bed of the truck) would all lead a reasonable officer to classify the encounter as an "ambush situation" sufficient to put an officer on the highest alert for his safety.   Najolia also testified that Briceno did what any officer faced with that scenario in light of the totality of the circumstances would have done and was trained to do – shoot his weapon to protect himself from a reasonably perceived threat.

Based on all of the above, the Court concludes that Briceno's use of deadly force was reasonable because he had probable cause to believe Poole posed a threat of serious bodily harm when he reached into the truck bed.   Moreover, qualified immunity would protect Briceno from

---

[2]  As did the Court, at least fifteen times.

liability in this case because a reasonable officer could have believed that shooting Poole was lawful in light of clearly established law and the information Briceno possessed at the time of the shooting.

Accordingly, the Court finds in favor of the Defendants.  All claims against Briceno and the City of Shreveport are dismissed.  A judgment in conformance with this memorandum will issue forthwith.

**THUS DONE AND SIGNED**, this 23rd day of February, 2022.


_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE